### SAM HARRIS v. THE STATE.

No. 3192. Decided June 26, 1914.

Rehearing denied October 14, 1914.

**1.—Murder—Argument of Counsel—Mutual Combat—Abandonment of Difficulty.**

Where, upon trial of murder, the evidence showed that the parties had a fight and deceased then got up and ran, when defendant followed him and struck him on the head with an axe, when parties interfered and took deceased into a house when defendant again attacked him with an axe and killed him, there was no reversible error in the argument of State's counsel that if deceased had abandoned the mutual combat, it would be the same as if he had never engaged in the difficulty.

**2.—Same—Evidence—Insanity—Argument of Counsel.**

Where the county attorney, in a moment of petulancy, made a derogatory remark about defendant in questioning the witness and immediately apologized therefor, and the court instructed the jury not to consider the same, there was no reversible error.

**3.—Same—Temporary Insanity—Use of Intoxicating Liquor.**

Temporary insanity produced by the use of intoxicating liquors will not reduce an offense from murder to manslaughter, and the court did not err in refusing a requested charge to so instruct the jury.

**4.—Same—Charge of Court—Manslaughter.**

It is not the law that if defendant's mind was so intoxicated from the recent immoderate use of intoxicating liquors to the extent that he was incapable of cool reflection that that fact should be considered in passing on the issue of manslaughter.

**5.—Same—Appointed Counsel—Preparation for Trial.**

Where the court gave appointed counsel all the time the statute required, and the fact was not made known that more time was desired or a postponement asked, it is too late after verdict to contend that more time should have been given counsel to prepare the case for trial.

**6.—Same—Temporary Insanity—Mitigation of Punishment.**

Where the court charged the jury that if they found defendant temporarily insane from the recent use of intoxicants, to take this into consideration in mitigation of the punishment assessed, this was all the law authorized now, since murder is only of one degree; it was different under the old statute.

**7.—Same—Postponement—Practice on Appeal.**

Where the submission of the case in this court had already been postponed once at appellant's request, a further request could not be granted. Davidson, Judge, dissenting.

**8.—Same—Death Penalty—Indeterminate Sentence Law.**

The contention of appellant's counsel, on motion for rehearing, that the punishment of death in this State does no longer exist for any crime, and that such punishment was repealed by the indeterminate sentence law of the Thirty-third Legislature is untenable, and there was no error in the jury assessing the death penalty for murder.

**9.—Same—Indeterminate Sentence Law—Legislative Intent.**

There is nothing repugnant or inconsistent in the amendment of the indeterminate sentence law with those laws fixing the death penalty for certain crimes; the only intention of the Legislature being to restore to the defendant the right to have the jury assess the punishment in all cases and give consideration to any mitigating circumstances, and requiring the court to fix the minimum punishment fixed by the statute and the maximum punishment fixed by the jury, so the person convicted may have the benefit of good conduct while confined in the penitentiary.

**10—Same—Repeal—Death Penalty.**

The indeterminate sentence law, as amended, neither expressly nor by implication repeals those provisions of the Code which authorize the jury to assess the death penalty for certain crimes, when they, in their judgment, believe that this punishment should be assessed.

**11.—Same—Sufficiency of the Evidence—Death Penalty.**

Where, upon trial of murder, the evidence sustained the conviction assessing the death penalty, there was no reversible error.

Appeal from the District Court of Jefferson. Tried below before the Hon. W. H. Davidson.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*V. A. Collins* and *F. G. Vaughn,* for appellant.—On question of repeal of death penalty for crime: Ex parte Marshall, 72 Texas Crim. Rep., 83, 161 S. W. Rep., 112.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was found guilty of murder, and his

punishment assessed at death, from which conviction he prosecutes this appeal.

In the first bill of exceptions it is shown that counsel for the State in his argument stated to the jury, that if the deceased and defendant engaged in mutual combat, and the combat was abandoned by deceased it would be in law the same as if deceased had never engaged in the difficulty at all. Under the facts in this case we do not think this was a very improper statement. The evidence shows that when attention was first called to the parties, they were down on the ground fighting; that deceased got up and ran, when appellant took after him and struck him on the head with a small axe, felling him to the ground. Alfred Barnes interfered and took the deceased into a house to wash the blood off of him, appellant endeavoring to force his way into the house. Barnes ordered him away, and undertook to carry deceased to his home, appellant walking along behind; when without other provocation he again struck deceased with the axe, killing him. Certainly, as qualified by the court, the bill presents no error.

Appellant introduced Dr. Will T. Williams as an expert witness on the issue of insanity. He asked a number of hypothetical questions, to which the witness gave answers, and then the county attorney examined him hypothetically, stating the premises as he considered the evidence, and at the end of one of the questions stating: "Now, doctor, that's the best I can state it, and as far as I am concerned, and as far as the State of Texas is concerned, we are not after doing this fellow anything but justice." Appellant objected to this statement as entirely gratuitous. The county attorney stated: "I will withdraw it then. We want to give him all the hell we can." The court at once instructed the jury not to consider such statement, and again in his written charge so instructed them. The county attorney apologized to the court and jury for having used the expressions. Under such circumstances, as there was nothing in the expressions used tending to show the guilt of appellant, no error is presented. The county attorney at first was trying to be magnanimous by informing the doctor that neither he nor the State wanted any injustice done appellant, and when this was objected to, he, as men often do, in a moment of petulancy, made the other remark. As he apologized to the court and jury for having done so, and the jury was twice instructed that it was improper and should not be considered by them, the hurt, if any, was certainly removed.

Temporary insanity produced by the use of intoxicating liquors will not reduce an offense from murder to manslaughter, and the court did not err in refusing the special charge requesting him to so instruct the jury. By the terms of article 41 of the Penal Code, it was provided, when murder was divided into two degrees, that temporary insanity so produced might reduce the offense from murder in the first to murder in the second degree. In all other instances the evidence was admissible only in mitigation of the punishment, but not to reduce the

grade of the offense.   Evers v. State, 31 Texas Crim. Rep., 318; Clore
v. State, 26 Texas Crim. App., 624; Hernandez v. State, 32 Texas
Crim. Rep., 271; Gaitan v. State, 11 Texas Crim. App., 544; Houston
v. State, 26 Texas Crim. App., 657.

Again in charge No. 2 appellant seeks to have the court, among other
things, instruct the jury:  "And if you believe that defendant's mind
was so intoxicated from the recent immoderate use of intoxicating liquors
that he was incapable of cool and collected consideration," etc., that fact
should be considered in passing on the issue of manslaughter.   This
is not the law.   This is a condition brought about by himself alone, and
the court fairly and fully submitted the issue of manslaughter as made
by the testimony.

These are all the bills in the record, but in the motion for new trial
it is contended that the court should have given appointed counsel
more time in which to prepare the case for trial.   The court gave all
the time the statute requires, and if counsel desired more time, he
should have made that fact known at the time the case was called
for trial, or if during the trial any state of facts arose which led him
to believe that by a postponement of the case he could secure evidence
beneficial to his client, he should have asked leave of the court to
withdraw his announcement and postpone the case.   It is too late after
verdict to make such contention, unless some showing is made that
since the trial he has learned of testimony which would have been
beneficial and attach the affidavits of the witnesses stating the facts
to which they would testify.   In this case no showing is made that any
witness would swear to any fact—in fact the motion for a new trial is
not sworn to, nor is the affidavit of any witness attached to it, nor in the
motion is the name of any witness given.

No objections were made to the charge of the court at the time it
was submitted to counsel and before it was read to the jury.   However,
in the motion for new trial there is some complaint made as to that
portion of the charge presenting the issue of temporary insanity from
the recent use of intoxicating liquors.   This portion is a fair presenta-
tion of the issue and not subject to the criticisms leveled at it.   It
authorized the jury if they found appellant temporarily insane from
the recent use of intoxicants, to take this in consideration in miti-
gation of the punishment assessed, in case they found appellant guilty.
This is all the law authorizes now since murder is only of one degree.

Counsel was appointed by the court to defend appellant, and they
did so ably.   They write that it is impossible for them to come to
Austin at this time, and ask that the submission of the case be post-
poned until October.   We have already postponed the case once at ap-
pellant's request, and while we must commend them in that they,
without money and without price, are willing to come to Austin and
present an argument on appeal, yet as the court must adjourn this
week, we do not feel that we would be justified in postponing submis-
sion of the case for three months.   If, however, after counsel have

read this opinion, they still think the record presents error for which the case should be reversed, they will doubtless file a motion for rehearing, and as the death penalty was assessed, and counsel could not come at this time, if they so desire we will hear them on the motion for rehearing.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, JUDGE.—This being a death penalty, I think it ought to have been postponed for argument till October term next. I express no opinion as to questions discussed as I have not had time to investigate them satisfactorily.

### ON REHEARING.

#### October 14, 1914.

HARPER, JUDGE.—Appellant's counsel, on motion for rehearing, has raised the question, that in Texas the punishment of death is no longer fixed as punishment for crime—that such laws were repealed by the indeterminate sentence law passed at the First Called Session of the Thirty-third Legislature. This is the first time such question has been raised, but, of course, if our laws no longer authorize the infliction of death as a punishment for crime, the question can be raised at any time, for no punishment not authorized by law can be inflicted. But does the indeterminate sentence law repeal those statutes authorizing the death penalty to be assessed for certain offenses? If so, it is by implication only, for that Act contains no clause expressly repealing laws assessing the death penalty, and repeals by implication are not favored, and it is only when there is an unavoidable inconsistency in the two Acts that the later law will be held to repeal the earlier statutory provision. (Sutherland on Stat. Con., sec. 247.) It is contended by appellant that the first indeterminate sentence passed at the Regular Session of the Thirty-third Legislature exempted from its provisions by specific words those cases in which the death penalty may be assessed, and the later Act does not do so; that it was the intention of the Legislature to repeal those provisions of the Code assessing the death penalty for certain crimes. We do not think so. By referring to the first indeterminate sentence law (Chap. 132, Acts 33rd Leg.) it will be seen that by its terms and provisions it *took away from the jury the right to assess the punishment* in all felonies, except in cases where the jury desired to inflict the death penalty, and required *the court* to assess the punishment at a fixed maximum and minimum Act (Chap. 5, Acts of the First Called Session of the Thirty-third Leg.) it restored to the jury the right and made it their duty to assess the punishment in all felonies, necessarily including those cases in which the death penalty might be assessed, and then provided that period of time of imprisonment in the penitentiary. By the amendatory

if the punishment was assessed at a term of years in the penitentiary, that the judge in passing sentence should pronounce an indeterminate sentence, assessing the maximum punishment at the term fixed by the jury, and a minimum term of the least punishment fixed by law for such an offense. In this latter law there is nothing repugnant or inconsistent with those laws affixing the death penalty for certain crimes, but it is clearly manifest that the only purpose the Legislature had in view was to restore to the defendant the right to have the jury assess the punishment in all cases, that they might give consideration to any mitigating circumstances which the evidence might disclose, and then require the court to assess an indeterminate sentence, using the term of imprisonment as fixed by the jury as the maximum term, that a person convicted of crime might be given the benefit of good conduct while confined in the penitentiary. The law neither expressly nor by implication repeals those provisions of the Code which authorize the jury to assess the death penalty for certain crimes when they in their judgment think that this punishment should be assessed. No court would be authorized to hold that those parts of the Code authorizing the infliction of the death penalty had been repealed, unless the Legislature by express statute had so declared, or the language used in a later Act was so repugnant to the earlier provisions of the Code, that one was necessarily driven to the conclusion from the language used that this was the intent and purpose of the Legislature.

All the other questions discussed were passed on in the original opinion, and counsel's only other contention made in his able oral argument in this court is that the evidence does not disclose such a state of facts that the death penalty should have been assessed. He does not contend that the evidence does not show an unlawful killing, but that the record raises the issue that appellant was temporarily insane from the recent use of intoxicating liquors. This issue was submitted to the jury fairly by the trial court and they find against his contention. Appellant, it is true, testifies he was so drunk he had no recollection of the homicide. He says he took one drink of whisky early in the morning, and then later drank two glasses of egg-nog and remembers nothing more that took place that day. There is evidence that he may have drunk a quantity of wine also, but no positive proof of that fact. There is only one eyewitness to the killing, Alfred Barnes. He testifies that as he looked down the street he saw a negro and white man fighting; they went to the ground; he did not know which one was on top; that the white man shortly got up and broke and run, when the negro took after him with an axe, and when he overtook the white man, knocked him to the ground. Barnes says he at once went to them and recognized appellant as the negro and deceased as the white man. That deceased was on the ground, his head being bloody, and he then separated them, and carried the man in a house to wash the blood from off of him. While doing so appellant came to the door and made

threatening remarks. Barnes ordered him away and then undertook to carry the white man home. Appellant again approached and without a word struck the white man with the axe, knocking him down, and took after Barnes with the axe. Barnes fled, when appellant returned to where the white man lay on the ground, and again struck him with the axe, saying, "You G—d d—n s—n of a b—h, I will kill you," and did so.

Appellant did not have a mark or scratch of any kind on him— only some blood on his clothes that apparently came from deceased. This evidence certainly authorized the assessing of the death penalty under the law, for it shows a fixed purpose to kill, unless appellant was temporarily insane from the recent use of intoxicating liquors. There is evidence pro and con on this issue, and we would not feel authorized to disturb the finding of the jury on that issue.

The motion for rehearing is overruled.

*Overruled.*